UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MAURICE JONES, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) No. 4:20-CV-1206 RLW |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Movant Maurice Jones' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 1) ("§ 2255 Motion"). The United States opposes the Motion (ECF No. 7), and the matter is ready for decision. For the following reasons, the Court finds the § 2255 Motion is moot and will dismiss it on that basis.

**Background**

On April 4, 2018, a federal Grand Jury for the Eastern District of Missouri returned a three-count Indictment charging Movant and co-defendant Kristin D. Johnson-Arnold ("Arnold") in Count One with the knowing possession with intent to distribute a mixture or substance containing Heroin and Fentanyl in violation of 21 U.S.C. § 841(a)(1), and in Count Two with the possession of a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. §924(c). United States v. Maurice Jones, No. 4:18-CR-287 RLW (E.D. Mo.) (ECF No. 1).[1] Movant was not charged in Count Three of the Indictment.

The Indictment stemmed from Movant's arrest on March 21, 2018. After negotiations between the parties, the United States and Movant reached a guilty plea agreement that

---

[1] The citations to the Court's Electronic Case Management filing system in this Background section are to the Criminal Case record, 4:18-CR-287 RLW.

subsequently was reduced to writing. (ECF No. 72.) The following facts are quoted from the stipulation of facts set forth in the Guilty Plea Agreement signed by the Government, Movant, and his retained attorney Nick A. Zotos ("Counsel"):

> On March 21, 2018, in the City of St. Louis, within the Eastern District of Missouri, a marked St. Louis Metropolitan Police Department ("SLMPD") patrol car encountered the defendant's vehicle. The defendant was driving the vehicle and co-defendant [Arnold] was the front seat passenger. The defendant sped away at a high rate of speed. The SLMPD Air Support Unit began tracking the car as it led the police on a lengthy pursuit through residential neighborhoods in the City of St. Louis.
>
> A SLMPD Air Support officer reported that as the car drove down an alley, Arnold placed an item in a dumpster. SLMPD officers searched the dumpster and recovered a firearm and large quantity of a mixture or substance that contained Fentanyl.
>
> The defendant and Arnold were arrested soon thereafter. The defendant was advised of his constitutional rights pursuant to *Miranda v. Arizona* and made a knowing and voluntary statement admitting that the drugs were his.
>
> The drugs were conveyed to the SLMPD Crime Laboratory and determined to be approximately 800 capsules containing a 74.16 grams of a mixture or substance that contained Fentanyl.
>
> By this plea agreement, the defendant acknowledges that he intended to distribute the Fentanyl.
>
> The defendant also acknowledges that the following circumstances can be considered to be relevant conduct for sentencing purposes:
>
> On April 3, May 22, and August 22, 2018, in St. Louis County, within the Eastern District of Missouri the defendant sold approximately 36 capsules containing a mixture or substance that contained Fentanyl to an undercover St. Louis County detective.
>
> The parties agree that the total amount of the mixture or substance containing Fentanyl for which the defendant is responsible, including relevant conduct, is more than 40 grams but less than 160 grams.

Guilty Plea Agreement (ECF No. 72 at 3-4).

On May 1, 2019, the parties appeared before the Court for a change of plea hearing to Count One of the Indictment. (ECF No. 71). In exchange for Movant's plea of guilty to Count

2

One, the Government agreed to dismiss Count Two at the time of sentencing and agreed that no further federal prosecution would be brought in this District relative to Movant's possession with the intent to distribute a mixture or substance containing Heroin and Fentanyl and possession of a firearm in furtherance of drug trafficking crime which occurred on March 21, 2018 and several sales of a mixture or substance containing Fentanyl to an undercover police officer that occurred between April 3, 2018 and August 22, 2018. (ECF No. 72 at 1-2). The Government also agreed there would be no further federal prosecution of Movant in connection with a quantity of marijuana and four firearms seized during a search of Movant's girlfriend's residence on September 7, 2018. (Id. at 2).

The Guilty Plea Agreement stated that the parties agreed the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties therein was the result of negotiation and led, in part, to the guilty plea. The parties further agreed that because the Government would be dismissing Count Two, neither party could request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court. (Id. at 2.)

The Guilty Plea Agreement included the parties' recommendations concerning the application of the Sentencing Guidelines, 2018 Manual. (Id. at 4-6). The parties agreed that the Base Offense Level was 24 as found in Guidelines Section 2D1.1(c)(8) and that the quantity of controlled substance Movant was accountable for was more than 40 grams and less than 160 grams of a mixture or substance containing Fentanyl. (Id. at 5). The parties recommended that two levels should be added pursuant to Section 2D1.1(b)(1) because Movant possessed a firearm and two levels should be added pursuant to Section 3C1.2 because Movant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law

enforcement officer. (Id.) After subtracting three levels for Movant's timely acceptance of responsibility, the resulting recommended Total Offense Level was 25. (Id. at 5-6).

At the change of plea hearing, Movant was placed under oath prior to answering any questions. (Plea Hrg. Tr., ECF No. 103 at 2-3). Movant stated he had no physical or mental health problems, was able to think clearly, and had no difficulty understanding the Court's questions. (Id. at 3-4). The Court questioned Movant on Counsel's legal representation. (Id. at 4-5). Movant responded that he had enough time to discuss his case with Counsel, he was satisfied with Counsel's representation, and Counsel did everything Movant asked him to do in the case. (Id.) The Court asked Movant, "Is there anything you wanted Mr. Zotos to do that he refused to do in representing you here?" (Id. at 5). Movant responded, "No, sir." (Id.)

The Court questioned Movant about the Guilty Plea Agreement. The Court established that Movant had read and discussed the agreement with Counsel prior to signing it. (Id. at 7). Movant confirmed that everything in the document was true to the best of his knowledge and understanding, and that there was nothing in it that he disagreed with or that he did not understand. (Id.) The Court requested that the Government state the facts it intended to prove beyond a reasonable doubt if the case were to go to trial. (Id. at 9). The attorney for the government re-stated the facts as they appear in the Guilty Plea Agreement. (Id. at 10-11).

The following colloquy then took place:

THE COURT: Mr. Jones, did you go over those facts carefully with Mr. Zotos?

THE DEFENDANT: Yes, sir.

THE COURT: Is there any disagreement about them?

THE DEFENDANT: No sir.

THE COURT: Did you do those things that were just stated for the record?

THE DEFENDANT: Yes, sir.

4

(Id. at 11).

The Court directed Movant to page four of the Guilty Plea Agreement which contained the parties' recommendations to the Court concerning the application of the Sentencing Guidelines. (Id. at 13). The Court asked Counsel to outline the parties' agreements. (Id.) In relevant part, Counsel stated that Movant "will be assessed two levels … for possession of the firearm." (Id.) Finally, Movant confirmed that he was formally entering his plea of guilty, which the Court accepted, finding Movant was competent to enter a plea, knew his rights, and was acting voluntarily. (Id. at 17-18).

On June 24, 2019, the United States Probation Office for the Eastern District of Missouri ("USPO") filed a Disclosure Presentence Investigation Report ("PSR"). (ECF No. 75). On July 23, 2019, Counsel filed a statement advising the Court that Movant had no objection to the PSR. (ECF No. 76). On July 24, 2019, the USPO filed the Final PSR. (ECF No. 77.) The Final PSR included the following Offense Level Computation, which corresponded to the parties' agreement: The base offense level was 24. Two levels were added because Movant possessed a dangerous weapon, and two levels were added because Movant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. Three levels were deducted based on Movant's acceptance of responsibility, resulting in a total offense level of 25. (Id. at 6-7, ¶¶ 22-32). The USPO determined that Movant had a Criminal History Category of II. (Id. at 8, ¶ 38). Based upon a total offense level of 25 and a Criminal History Category of II, the Guideline imprisonment range was 63 months to 78 months. (Id. at 13, ¶ 69).

On August 15, 2019, Counsel filed Objections to the PSR. (ECF No. 83). Movant's objections were related to the PSR's Criminal History Category computation only. Movant did not object to the PSR's summary of the offense conduct which stated that the officers recovered a

5

firearm and 880 capsules of what the SLMPD laboratory determined to be 35.2 grams of a mixture or substance containing Heroin and Fentanyl. Movant did not object to the PSR's conclusion that Movant's Base Offense Level was 24. Movant also did not object to the PSR's determination that Movant should be assessed a two-level increase for possession of a firearm. On August 20, 2019, the USPO filed the Officer Revised Final PSR (ECF No. 86). The revised PSR did not modify either the offense conduct or the offense level computation.

Movant's sentencing proceedings were held before the Court on August 27, 2019. (ECF No. 89). The Court heard Counsel's arguments on Movant's pending objections to the PSR's criminal history computation. (Sent. Tr., ECF No. 105 at 3-5). The Government sustained Movant's objections, which reduced Movant's Criminal History Category to I. (Id. at 4). Movant's resulting Guideline range of imprisonment was reduced to 57 to 71 months imprisonment. (Id.) The parties had no additional objections to the factual accuracy of the PSR or to the USPO's application of the Guidelines. (Id. at 5). The Court directed the USPO to prepare a Court Amended Final PSR which included an adjustment to the criminal history computation but did not modify either the offense conduct or the offense level computation. (Id. at 4; ECF No. 90).

The Court sentenced Movant to a term of imprisonment of 57 months, at the low end of the Guideline range, and imposed a three-year term of supervised release. (Id. at 8-9). Neither party objected to the imposition of sentence. (Id. at 11). The Government moved to dismiss Count Two pursuant to the terms of the negotiated plea agreement. (Id. at 11-12). Neither party objected to the Court's findings of fact, conclusions of law, or to the manner in which the sentence was pronounced. (Id. at 11).

Movant did not appeal his conviction and/or sentence to the Eighth Circuit Court of Appeals. On September 1, 2020, Movant timely filed this §2255 motion for post-conviction relief.

6

Movant was released from the Federal Bureau of Prisons on January 14, 2022, and is currently on supervised release.[2]

**Legal Standard**

Pursuant to 28 U.S.C. § 2255, a defendant may seek relief on grounds that the sentence was imposed in violation of the Constitution or law of the United States, that the Court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To warrant relief under § 2255, the errors of which the movant complains must amount to a fundamental miscarriage of justice. Davis v. United States, 417 U.S. 333 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). The Supreme Court has instructed that "a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

The Court must hold an evidentiary hearing to consider claims "unless the motion, files, and record conclusively show [the movant] is not entitled to relief." Koskela v. United States, 235 F.3d 1148, 1149 (8th Cir. 2001).

**Discussion**

A petition for habeas corpus must be filed while the petitioner is "in custody" under sentence of a federal court. 28 U.S.C. § 2255(a); see Maleng v. Cook, 490 U.S. 488 (1989). The Supreme Court's "interpretation of the 'in custody' language has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus." Id. Once a sentence has expired, however, a habeas petitioner must show a concrete and continuing injury, i.e., a collateral consequence of the conviction, in order to continue his action. Spencer v. Kemna, 523 U.S. 1, 7-

---

[2] See Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Mar. 14, 2023).

8 (1998); Farris v. United States, No. 4:15-CV-01728 JAR, 2019 WL 316567, at *2 (E.D. Mo. Jan. 24, 2019) (citing cases).

In the present case, Jones makes two conclusory allegations of ineffective assistance of counsel. Neither of the allegations concerns the fact of his conviction, but rather concern his sentence. Jones alleges his attorney was ineffective for failing to challenge (1) the amount of controlled substances for which Jones was held accountable, and (2) a two-level increase for Jones' possession of a firearm. (ECF No. 1 at 4.)

Jones has finished serving his term of imprisonment. Even if the Court were to rule in Jones' favor on his ineffective assistance of counsel claims, such a ruling would have no effect. There is no possible remedy available to shorten a term of imprisonment that Jones has completed serving, and he does not challenge the supervised release term. Jones does not show a collateral consequence of the conviction and therefore his § 2255 motion is now moot. See Giese v. United States, 853 F. App'x 46, 47 (8th Cir. 2021) (dismissing as moot appeal from denial of motion to vacate sentence under § 2255, where the movant had been released from prison and his § 2255 motion alleged only ineffective assistance of counsel for failing to seek a downward departure); see also Owen v. United States, 930 F.3d 989, 990 (8th Cir. 2019) (holding that release will moot a § 2255 motion when the petitioner "challenge[s] only his term of imprisonment" and not "the term of supervised release").

**Conclusion**

For these reasons, Movant Maurice Jones' § 2255 Motion is moot because he has completed serving his imposed term of imprisonment and does not show a collateral consequence of the conviction. The § 2255 Motion is subject to dismissal on that basis.

Accordingly,

**IT IS HEREBY ORDERED** that Maurice Jones' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (ECF No. 1) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not be issued in this case as the Court concludes that Jones has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), or demonstrated that reasonable jurists could debate whether the Court's procedural ruling is correct. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

A separate Judgment will accompany this Memorandum and Order.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 15th day of March, 2023.